IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD C. PERRY and WILLIAM WILK, | ) | |
| | ) | |
| Plaintiffs, | ) | 07 C 635 |
| | ) | |
| vs. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| SHEET METAL WORKERS' LOCAL NO. 73 PENSION FUND, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This suit arises under Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. The plaintiffs, Donald Perry and William Wilk, have sued the defendant, Sheet Metal Workers' Local No. 73 Pension Fund ("the Local Fund"), claiming that they are entitled to pension credit for the time they spent as instructors in the apprenticeship training program at the City of Chicago's Washburne Trade School from 1984 through October of 1993. The Local Fund submits that its decision to deny their claims was dictated by the terms of the applicable pension plan. Both sides now move for summary judgment.[1]

I.

## SUMMARY JUDGMENT

The Federal Rules of Civil Procedure mandate that summary judgment be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[1] The briefing schedule allowed for both sides to file an opening brief, a response to the other side's opening brief, and a closing reply brief – three briefs a side. (Dkt. # 31). The reply briefs were ultimately due on December 5, 2007. (Dkt. # 51). While the Local Fund filed a reply, the plaintiffs have chosen not to do so. *See* Local Rule 78.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are facts that "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Paz v. Wauconda Healthcare and Rehabilitation Centre, LLC*, 464 F.3d 659, 664 (7th Cir.2006). "Courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." *Scott v. Harris*, --- U.S. ----, ---- ----, 127 S.Ct. 1769, 1774-1775 (2007). "'When, as here, cross-motions for summary judgment are filed, we look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact.'" *Diaz v. Prudential Ins. Co. of America*, 499 F.3d 640, 643 (7th Cir. 2007).

## II.

## FACTS

The parties have filed statements of fact and responses thereto under Local Rule 56.1, and I will rely on those statements to resolve the parties' motions. *Ammons v. Aramark Uniform Servs.*,

*Inc.*, 368 F.3d 809, 817 (7th Cir.2004). As such, I shall ignore those factual assertions and denials that fail to comply with the rule, and where denials are improper or absent, the factual assertion they oppose will be deemed admitted. L.R. 56.1(a)(3); (b)(3); *Ammons*, 368 F.3d at 817; *McNeil v. United States*, 508 U.S. 106, 113 (1993)(court may insist upon strict adherence to its local rules). Most of the relevant facts here are undisputed.

Messrs. Perry and Wilk are participants in the Local Fund, which is a multiemployer pension plan covered by ERISA. In 1984, Mr. Perry began working for the City of Chicago at the Washburne Trade School as an instructor in the Sheet Metal Workers' Local No. 73 Union ("Local 73") apprenticeship program. (*Defendant's Statement of Undisputed Material Facts ("Def.St.")*, ¶ 5; *Plaintiff's L.R. 56.1(b)(3) Response ("Pl.Rsp.")*, ¶ 5). During this period, he was actually an employee of Sheet Metal Workers' Local No. 73 Apprentice and Journeymen's Training Fund ("Training Fund"). (*Plaintiff's Statement of Undisputed Facts*, Ex.F; *Defendants' L.R.56.1(b)(3) Response*, ¶¶ 5, 8, 23). While Mr. Perry has submitted pay stubs and federal income tax withholding statement he claims demonstrate that he was employed by Local 73 while teaching at Washburne Trade School (*Plaintiff's Statement of Undisputed Facts*, ¶ 23), that documentation clearly indicates that he was being paid by the Training Fund. (*Id.*, Ex. F).

Significantly, it is undisputed that the defendant Local Fund, Local 73, and the Training Fund are all separate legal entities. (*Defendants' L.R. 56.1(b)(3) Statement of Additional Undisputed Facts*, ¶¶ 1, 12). The Local Fund is jointly sponsored by Local 73 and the Chicagoland Sheet Metal Contractors Association. (*Defendants' L.R. 56.1(b)(3) Statement of Additional Undisputed Facts*, ¶ 9). The Training Fund is also jointly sponsored by Local 73 and the Chicagoland Sheet Metal Contractors Association. (*Id.*, ¶ 10).

Throughout his tenure at the Washburne Trade School the trade school, Mr. Perry's employment was not covered by a collective bargaining or a participation agreement which required an employer to make contributions to the Local Fund on Perry's behalf (*Def.St.* ¶ 6; *Pl.Rsp.* ¶ 6), and no contributions on his behalf were ever made to the Fund for his work as an instructor. (*Def.St.* ¶ 7; *Pl.Rsp.* ¶ 7). Consequently, the Local Fund did not award Mr. Perry any pension credits for his work as a trade school instructor. (*Def.St.* ¶ 8; *Pl.Rsp.* ¶ 8).

Well after his employment at the trade school, on November 5, 2005, Mr. Perry wrote a letter to the Local Fund requesting 8¼ years worth of pension credits for his time at the City of Chicago's Washburne Trade School. (*Def.St.* ¶ 9; *Pl.Rsp.* ¶ 9). On March 3, 2006, the Local Fund notified Mr. Perry by letter that his November 5, 2005 claim for pension credits was denied. (*Def.St.* ¶ 10; *Pl.Rsp.* ¶ 10). Mr. Perry responded with a letter appealing the decision on May 1, 2006. (*Def.St.* ¶ 11; *Pl.Rsp.* ¶ 11). He attached a copy of a settlement agreement he reached with the Sheet Metal Workers' *National* Pension Fund ("National Fund"). (*Def.St.* ¶ 12; *Pl.Rsp.* ¶ 12). In the agreement, the National Fund conceded that Mr. Perry had been employed with the Sheet Metal Workers' Local No. 73 Apprentice & Journeymen's *Training* Fund during the years 1985 to 1992, while he was an instructor at the trade school. (*Def.St.*, Ex. A.1, at 13). The National Fund credited that service, although it constituted "non-covered service." (*Id.*, at 13-14). Mr. Perry also pointed out that a Mr. James Slovey, the Apprentice Coordinator for Local No. 73, received pension credits for his work at Washburne Trade School. (*Id.*)

The Local Fund's trustees discussed Mr. Perry's appeal at their July 26, 2006 meeting. In so doing, they considered (i) the Local Fund's Pension Plan; (ii) a memorandum from Local Fund co-counsel Michael Daley and Michael Richardson; (iii) a supplemental memorandum from Local

4

Fund co-counsel Michael Richardson; (iv) Mr. Perry's November 5, 2005 letter; (v) the Local Fund's March 3, 2006 letter; (vi) Mr. Perry's Annual Statement of Accumulated Pension Credit as of 2005; (vii) Mr. Perry's May 1, 2006 letter; and (viii) Perry's settlement agreement with the National Fund. (*Def.St.* ¶ 14; *Pl.Rsp.* ¶ 14). In denying Mr. Perry's appeal by letter dated July 31, 2006, the Local Fund found that Mr. Perry was an employee of the Washburne Trade School, which was never an "Employer" or "Contributing Employer" under the terms of the Local Fund's Pension Plan. (*Def.St.*, Ex. A.3 at 1-2). It further indicated that settlements with the National Fund were not binding on the Local Fund[2], and explained that James Slovey was an employee of the Sheet Metal Workers Local 73 Apprentice And Journeyman's Training Fund which *was* a "Contributing Employer" under the terms of the Plan. (*Def.St.*, Ex. A.3 at 1-2). Indeed, the parties agree that the Sheet Metal Workers' Local No. 73 Joint Apprenticeship and Training Fund ("Training Fund") made contributions to the Local Fund on behalf of James Slovey for Slovey's service at the City of Chicago's Washburne Trade School for the period 1984 through October 1993, pursuant to a participation agreement between the Training Fund and the Local Fund. (*Def.St.* ¶ 24; *Pl.Rsp.* ¶ 24).

Mr. Wilk's tale is similar but shorter. From 1984 through October 1993, his service for the City of Chicago at the Washburne Trade School was not covered by a collective bargaining or participation agreement which required an employer to make contributions to the Local Fund on his behalf. (*Def.St.* ¶ 17; *Pl.Rsp.* ¶ 17). Nor were any contributions made to the Local Fund on his behalf. (*Def.St.* ¶ 18; *Pl.Rsp.* ¶ 18). Unlike Mr. Perry, Mr. Wilk has submitted no evidence to indicate who was paying him while he taught at the trade school. (*Plaintiff's Statement of*

---

[2] There is no dispute that the Local Fund is a separate legal entity from the National Fund, or that it is not an heir, legal representative, successor, or assign of the National Fund. (*Def.St.* ¶ 25-26; *Pl.Rsp.* ¶ 25-26).

5

*Undisputed Facts*). Like Mr. Perry, he wrote the Local Fund a letter – dated April 18, 2001 – about getting pension credit for his time as an instructor. (*Def.St.* ¶ 19; *Pl.Rsp.* ¶ 19). But the parties agree that, for whatever reason, the Fund has no record of responding to that letter or of any further correspondence from Mr. Wilk. (*Def.St.* ¶ 20-21; *Pl.Rsp.* ¶ 20-21).

## III.

## ANALYSIS

### A.

### The Plaintiffs' Failure To Support Any Of Their Arguments With Citation To Case Law Operates As A Waiver Of Those Arguments

The Seventh Circuit has consistently held that the failure to properly develop an argument with citation to relevant legal authority constitutes a waiver. *Weinstein v. Schwartz*, 422 F.3d 476, 477 n. 1 (7th Cir. 2005).[3] "[E]ven pro se litigants must include legal argument and cite supporting authority in their briefs." *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir.1998) (per curiam). Yet, neither the memorandum in support of plaintiff's motion for summary judgment, nor

---

[3] *Accord R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690, 701 (7th Cir. 2006) ("The arguments are undeveloped (not a single case is cited, and the brief does not explain why the district judge rules as he did) and forfeited.")(parenthesis in original); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n. 1 (7th Cir.2004) ("We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)."); *Pruitt v. City of Chicago*, 472 F.3d 925 (7th Cir.2006); *United States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir.2003); *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 610-611 (7th Cir.2006); *Baxter Intern., Inc. v. Abbott Laboratories*, 297 F.3d 544, 548 (7th Cir.2002)("Motions that simply assert a conclusion without the required reasoning, however, have no prospect of success."); *United States v. Amerson*, 185 F.3d 676, 689 (7th Cir.1999) ("given our adversarial system of litigation, it is not the role of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel."); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991). *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 743 (7th Cir. 2007); *United States v. Lanzotti*, 199 F.3d 954, 960 (7th Cir. 1999)("'The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.' [citation omitted]. *It is not this court's responsibility to research and construct the parties' arguments."*).

the memorandum in opposition to the defendant's motion for summary judgment is there a citation to a single case. Of course, there is no reason why a party opposing summary judgment need cite additional legal authority in a response brief, provided the argument depends on the application of facts to the legal standard already presented in the moving party's brief. *Davis v. Carter*, 452 F.3d 686, 692 (7th 2006). But, that does not excuse the absence of supporting authority in the opening memorandum. Even if waiver did not allow for denial of plaintiff's motion for summary judgment, the plaintiff's motion would still have to be denied and the defendant' motion granted.

## B.

### The Local Fund's Denial of Plaintiffs' Claim For Pension Credits Was Not Arbitrary And Capricious

The plaintiffs are challenging the Local Fund's denial of their claim for pension credits under 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989). Plenary review, then, is the default standard; it is required when the plan documents contain no indication of the scope of judicial review. *Diaz*, 424 F.3d at 636-37; *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000). "If a plan 'is going to reserve a broad, unchanneled discretion to deny claims, [plan participants] should be told this, and told clearly.'" *Diaz*, 424 F.3d at 637 (*quoting Herzberger*, 205 F.3d at 333). When that is the case, federal courts have adopted the arbitrary and capricious standard as the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations. *Firestone*, 489 U.S. at 109; *Rud v. Liberty Life Assur.*

*Co. of Boston*, 438 F.3d 772, 773 (7th Cir. 2006).

Here, the parties agree that the applicable standard of review is the arbitrary and capricious standard. (*Complaint*, ¶ 16(a); *Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment*, at 9; *Defendant's Memorandum of Law in Support of Motion for Summary Judgment*, at 4). Accordingly, that standard will be applied. *Patton v. MFS/Sun Life Financial Distributors, Inc.*, 480 F.3d 478 (7th Cir. 2007); *Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, 502 F.3d 725, 727 (7th Cir. 2007).[4] The Local Fund's decision can be deemed arbitrary and capricious only if the decision conflicts with the plain language of the Plan. *Id.* It can be overturned only if it is "downright unreasonable." *Id.* (*quoting Cozzie v. Met. Life Ins.*, 140 F.3d 1104, 1110 (7th Cir.1998)). Further, a court's review under the arbitrary and capricious standard is limited to the evidence in the administrative record. *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 662 (7th Cir. 2005); *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir. 1999).

ERISA requires plan trustees or fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D); *Patterson v. Shumate*, 504 U.S. 753, 760 (1992). Likewise, ERISA instructs courts to enforce strictly the terms of plans. 29 U.S.C. § 1104(a)(1)(D); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 552 (7th Cir.

---

[4] The Local Fund's Plan vests it with "discretionary authority to determine eligibility for benefits and to interpret the Plan." (*Defendant's Statement of Undisputed Material Facts*, Ex. A.2, §§ 6.3(a); 6.21). This is the type of language that has been found to trigger the application of the arbitrary and capricious standard of review. *Semien v. Life Ins. Co. of North America*, 436 F.3d 805, 810-811 (7th Cir. 2006)(". . . sole discretion and authority to apply, construe and interpret all Plan provisions, to grant or deny all claims for benefits and to determine all benefit eligibility issues."); *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452, 455 (7th Cir. 2005)(". . . discretionary authority to determine your eligibility for benefits and to interpret the terms and conditions of this Policy."); *Herzberger*, 205 F.3d at 331 (positing "safe harbor" language: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them.").

8

1997).

The Local Fund's Plan says that a participant "shall receive Pension Credits on the basis of his hours of Work in Covered Employment . . . ." (*Defendant's Statement of Undisputed Material Facts*, Ex. A.2, § 4.1(a)). Section 1.10 of the Plan defines "Covered Employment" as "employment of an Employee by an Employer for which contributions are required to be paid to the Fund including such employment prior to the Contribution Period which, if performed during the Contribution Period would have result in contributions being paid to the Fund." (*Id.*, Ex. A.2, § 1.10). "Contributing Employer" is defined in Section 1.8 as "an employer signatory to a Collective Bargaining agreement with the Union requiring contributions" or "an employer signatory to a participation agreement requiring contributions." (*Id.*, Ex. A.2, § 1.8).

Clearly, under the terms of the Plan, "Covered Employment" requires a "Contributing Employer." The plaintiffs concede they were not working for a "Contributing Employer" (*Plaintiffs' L.R. 56.1(b)(3) Response*, ¶¶ 6,17), so it follows that their employment was not covered under the Plan. The Local Fund's rejection of their clam for pension credits certainly cannot be called "downright unreasonable" – it followed the language of the Plan. In short, the undisputed material facts demonstrate that the Local Fund's denial was not arbitrary and capricious, and it is entitled to summary judgment.

### C.

### The Facts That Plaintiffs Contend Require Denial Of The Defendant's Motion For Summary Judgment Are Unsupported

That would seem to end things, but the plaintiffs assert some additional facts that they argue entitle them to summary judgment – or at least require the denial of the defendant's motion. These

9

facts, however, are not undisputed. Moreover, they find no support in the record. In the end, the plaintiffs are mistaken about the essential aspects of their case.

First, the plaintiffs claim that as a result of the Local Funds' decision not to credit their service as instructors, they have lost all their credit for the years they worked prior to that time. (*Plaintiff's Memorandum of Law in Support of Their Motion for Summary Judgment*, at 1, 3). But they provide no evidence of this and, in fact, their pension statements submitted by the Local Fund demonstrate otherwise. Mr. Wilk is still credited with 39 years of pension credits, (*Defendants' L.R. 56.1(b)(3) Response*, Ex. A.1 ), and Mr. Perry remains credited with 27.17 years. (*Id.*, Ex. B.1 at 11). Plaintiffs offer no response to these pension statements.

Second, the plaintiffs claim they were employees of Local 73. (*Plaintiffs' Statement of Undisputed Facts*, ¶¶ 5, 8). But even the evidence the plaintiffs themselves submit – actually, only Mr. Perry submits evidence – shows they were employees of the Training Fund. (*Plaintiffs' Statement of Undisputed Facts*, Ex. F). By the time plaintiffs filed their response to the defendant's motion for summary judgment, they had abandoned this claim.

Third, the plaintiffs misquote the sections of the Local Fund's Plan, which governs attribution of pension credit in this case. They point to Subsections 1.10(a), 1.10(b), and Section 2.06 as controlling in this instance. According to the plaintiffs, § 1.10(a) defines who may be a contributing employer, § 1.10(b) provides that a local union like Local 73 may be a contributing employer, and § 2.06 requires that contributing employers must sign participation agreements. (*Plaintiffs' Statement of Undisputed Facts*, ¶¶ 14, 15). But the Plan has no subsection §1.10(a) or 1.10(b), nor is there any § 2.06. There is a Section 1.10, but it defines covered employment, not contributing employers. (*Defendant's Statement of Undisputed Material Facts*, Ex. A.2). As already discussed

10

– and as conceded by the plaintiffs – the plaintiffs' work as instructors was not "Covered Employment" under the terms of the Plan. Plaintiffs do not attach a copy of the Plan to their submissions; the only copy in the record was provided by the defendant, raising the question of what document the plaintiffs are referring to.

Fourth, plaintiffs submit what they claim to be the participation agreement between the Local Fund and Local 73. (*Plaintiffs' Statement of Undisputed Facts*, ¶ 16). The agreement, however, is clearly not between the Local Fund and Local 73. The fund that is party to the agreement is not the Local Fund, but the *National* Fund. (*Id.*, Ex. C, at 1, 5). The employer is the Training Fund, although the agreement is signed on the Training Fund's behalf by Local 73's president and business manager, Stanley Karczynski. (*Id.*, Ex. C., at 5). In any case, there is nothing in the agreement that would require plaintiff's employer to make contributions to the *Local* Fund, as opposed to the *National* Fund.

Finally, although it is not so much an argument as an insinuation, plaintiffs seem to suggest that they are entitled to pension credits because Keith Switzer, an apprentice coordinator with Local 73, told them they would receive pension credit for working at the Washburne Trade School. (*Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment*, at 3; *Plaintiffs' Memorandum of Law in Opposition*, at 2). Under ERISA, however, there can be no oral modifications of a written plan. *Tegtmeier v. Midwest Operating Engineers Pension Trust Fund*, 390 F.3d 1040, 1048 (7th Cir. 2004); *Frahm v. Equitable Life Assur. Soc. of U.S.*, 137 F.3d 955, 960 (7th Cir. 1998). Faulty advice from a trained plan administrator employee cannot even form the basis of a cause of action, 137 F.3d at 959-60, and here, Mr. Switzer was not even a Local Fund employee.

## D.

### The Plaintiffs' Arguments Regarding Another Individual's Pension Credits Are Irrelevant, Improper, And Unsupported

After these missteps in the opening round of briefing in this case, the plaintiffs took a different tack in their memorandum opposing the defendant's motion for summary judgment. Instead of attacking the Local Fund's rejection of their claims for pension credits, they attacked the Local Fund's award of such credits to someone else. They know a Mr. James Slovey, who received pension credit for the time he put in at Washburne Trade School as the coordinator of the Training Fund's training program. (*Plaintiff's Memorandum of Law in Opposition*, at 1, 3). In fact, the Local Fund does not dispute that it and the Training Fund entered into a participation agreement covering Mr. Slovey's employment. (*Defendant's L.R. 56.1(b)(3) Reply to Plaintiffs' L.R. 56.1(b)(3(C) Statement of Additional Facts*, ¶ 4). Executed in 1993, it was retroactive to the beginning of Slovey's tenure. (*Id.*). As a result of that agreement, Mr. Slovey received pension credit for his entire time at the trade school. (*Id.*, ¶ 5). The plaintiffs argue that it was arbitrary and capricious for the Local Fund to have entered into a participation agreement covering Mr. Slovey but not them. (*Plaintiff's Memorandum of Law in Opposition*, at 4). They confine this argument to their opposing memorandum; there is no mention of Mr. Slovey and his participation agreement in plaintiffs' motion for summary judgment, supporting memorandum, or statement of facts.

The plaintiffs' case, however, is about whether the Local Fund's decision not to award them pension credits was arbitrary and capricious, as their own complaint recognized: "the defendant Fund has acted arbitrarily and capriciously in failing to recognize pension credits due them for their period of employment at Washburne Trade School." (*Complaint*, ¶ 16(A)). In fact, it is clear from the

undisputed facts that there were no pension credits due them. There is no allegation in the complaint that the Local Fund ought not to have granted Mr. Slovey pension credits or that it was arbitrary and capricious or even unfair to do so.

Basically, plaintiffs simply raise the specter of Mr. Slovey's participation agreement and leave it at that. They cite no case that suggests that it is in any way relevant to a determination as to whether the Local Fund's handling of the plaintiffs' claims was arbitrary and capricious. (*Plaintiffs' Memorandum of Law in Opposition*, at 4-6). As noted at the outset of this opinion, arguments that are unsupported by any legal authority are deemed waived. *Weinstein*, 422 F.3d at 477 n. 1; *Kramer*, 355 F.3d at 964 n. 1. The plaintiffs' argument about Mr. Slovey is not one that depends on a legal standard already presented in the defendant's brief – that means plaintiffs have to do their own legal research. *Davis*, 452 F.3d at 692; *Amerson*, 185 F.3d at 689. Because they have not, the argument is waived.

Perhaps sensing that they cannot succeed contending that the Local Fund's award of pension credit to Mr. Slovey under a participation agreement makes its denial of pension credits to the plaintiffs – who were not covered by any agreement – arbitrary and capricious, plaintiffs raise another new argument in their opposition brief. For the first time they suggest that the participation agreement covering Mr. Slovey violates Section 302(c)(5) of the Labor Management Relations Act ("LMRA"). 29 U.S.C. § 186(c)(5). (*Plaintiffs' Memorandum of Law in Opposition*, at 5-6). Under Subsection (B) of that provision, it is unlawful for an employer to make a payment to a labor organization unless " . . . the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund . . . ." 28 U.S.C. § 186(c)(5)(B). Of course, there *was* a detailed written

13

basis covering payments – the Local Fund's Plan – and there is no dispute that the Local Fund followed it. But the plaintiffs claim that the participation agreement covering Mr. Slovey was not an arm's length transaction because one or more trustees were on both sides of the agreement.

This is an entirely new claim, appearing nowhere in the plaintiffs' complaint or in their summary judgment motion and supporting memorandum. Thus, it comes too late. A plaintiff cannot amend its complaint through allegations or arguments made in response to a motion for summary judgment. *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004); *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). Moreover, it is unsupported by citation to case law. For the reasons discussed earlier, it is waived. *See Weinstein*, 422 F.3d at 477 n. 1; *Kramer*, 355 F.3d at 964 n. 1.

Even if it were not, plaintiffs' allegations about the makeup of the boards on either side of the participation agreement covering Mr. Slovey are unsupported. While it is true that elsewhere, plaintiffs assert that Tom Burek and Stanley Karczynski were on the boards of both the Local Fund and Local 73 (*Plaintiffs' L.R. 56.1(b)(3)(C) Statement of Additional Undisputed Material Facts*, ¶¶ 1, 2), the participation agreement covering Mr. Slovey, however, was between the Training Fund and the Local Fund. This argument then is another example of the failure to acknowledge the separateness of Local 73, the Training Fund, the National Fund, and the Local Fund – the only defendant in this case.

That leaves the plaintiffs' contention that it was simply unfair for Mr. Slovey to be covered by a participation agreement when they were not. This contention is perhaps least developed of all, not so much an argument as a nagging suspicion on the plaintiffs' part that something was amiss. Perhaps, but for this to provide a reason for denying defendant summary judgment, there ought to be some legal authority cited in plaintiffs' memorandum. As with the other unsupported,

undeveloped contentions in the motion for summary judgment and the opposition to the defendant's motion, this one is waived as well. *Weinstein*, 422 F.3d at 477 n. 1; *Kramer*, 355 F.3d at 964 n. 1. And in any event, at least some cases suggest that plaintiffs' concerns are not the stuff of an ERISA claim. *See Walling v. Brady*, 125 F.3d 114, 120 (3rd Cir. 1997)(rejecting claim that the payment of an additional, monthly $100 to only the 85% of Pension Fund members was arbitrary and capricious); *Siskind v. Sperry Retirement Program, Unisys*, 47 F.3d 498, 505 (2nd Cir. 1995)(rejecting claim that decision to offer early retirement to some, but not all, employees was arbitrary and capricious).

Moreover, an "unfairness" claim would require a demonstration that plaintiffs were similarly situated to Mr. Slovey. Even on the present record, there is lacking the requisite similarity. Mr. Slovey was in charge of the trade school's program and directed the plaintiffs' work, while the they were merely instructors. (*Plaintiffs' Statement of Undisputed Facts*, Ex. A, Perry Aff., ¶ 13; Ex. B, Wilk Aff., ¶ 11). Even if there were better facts that those on the plaintiffs' side, it is still not clear they could survive summary judgment. Their lament of "that's not fair" is reminiscent of the plaintiffs in *McNab v. General Motors Corp.*, 162 F.3d 959 (7th Cir. 1998), where the defendant selected among similarly situated employees to hand out early retirement offers, denying the plaintiffs the benefit while awarding it to others. The Seventh Circuit rejected their claims, and writing for the panel, Judge Easterbrook said:

> It is more than a little difficult to see why plaintiffs, whose applications were correctly denied under the program's stated criteria, should be entitled to relief because [defendant] was unduly generous with other employees. If this were a medical benefits program, would one decision to pay for an un-covered medical procedure (say, a dental implant in lieu of a bridge) entitle every other employee to reimbursement for that procedure? An employer is supposed to apply the plan's written terms, and departure from those terms on one occasion does not estop the

employer to enforce them on others. Plaintiffs suggest that every divergence from a plan's criteria is an "amendment" of the plan entitling them to the same benefits, but that is a non-starter.... Amendments are accomplished through a formal process and produce a revised written instrument.... Deviations from a plan are just that- deviations. The plan remains what it was, and claims for benefits continue to be evaluated in light of its written criteria.

162 F.3d at 961. Here, there is no dispute that the Local Fund applied the written terms of the Plan with respect to the plaintiffs and correctly denied their claims.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [# 25] is GRANTED, and the plaintiffs' motion for summary judgment [# 32] is DENIED

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 3/24/08

16